ORIGINAL

SEALED
BY ORDER OF THE COURT

FLORENCE T. NAKAKUNI        #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR.      #3740
Chief, Fraud & Financial Crimes Section

KENNETH M. SORENSON
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone:     (808) 541-2850
Facsimile:     (808) 541-2958
Email: ken.sorenson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 03 2014

at 2 o'clock and 00 min. P M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. NO. **CR14 00010 HG** |
| ) | |
| Plaintiff, ) | INDICTMENT |
| ) | |
| vs. ) | Count 1:      18 U.S.C. § 371 |
| ) | Count 2:      18 U.S.C. § 1956(h) |
| JENNIFER ANN MCTIGUE, (01) ) | Counts 3-23:   18 U.S.C. § 1343 |
| MARC MELTON, (02) ) | Counts 24-29: 18 U.S.C. § 1341 |
| SAKARA BLACKWELL, (03) ) | Counts 30-45: 18 U.S.C. § 1957 |
| a/k/a: "Dawn Sakaguchi" ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____ ) | |

INDICTMENT

**COUNT 1**
(Conspiracy to Commit Wire Fraud,
Mail Fraud and Money Laundering)

The Grand Jury charges that:

1.    From a precise date unknown to the Grand Jury, but beginning by in or about February 2011, and continuing until the date of this Indictment, in the District of Hawaii and elsewhere, JENNIFER MCTIGUE (MCTIGUE), MARC MELTON (MELTON) AND SAKARA BLACKWELL, a/k/a: "Dawn Sakaguchi", (BLACKWELL) the defendants, did knowingly and willfully conspire with each other and with others, both known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.    knowingly to devise, and intending to devise, a scheme and artifice to defraud and to obtain money from residential mortgage lenders and good faith purchasers of residential real estate by means of materially false and fraudulent pretenses, representations and promises, as well as omissions of material facts, and for the purpose of executing said scheme and artifice, and attempting to do so, to cause certain items to be transmitted, in interstate commerce, by means of wire communications, certain signs, signals and sounds, in violation of Title 18, United States Code, Section 1343; and,

b.   knowingly to devise, and intending to devise, a
scheme and artifice to defraud and to obtain money from
residential mortgage lenders and good faith purchasers of
residential real estate by means of materially false and
fraudulent pretenses, representations and promises, as well as
omissions of material facts, and for the purpose of executing
said scheme and artifice, and attempting to do so, to knowingly
send or deliver or cause to be sent or delivered, by the Postal
Service, and private and commercial interstate carriers,
according to the directions thereon, matters and things, in
violation of Title 18, United States Code, Section 1341; and,

## MANNER AND MEANS OF THE CONSPIRACY

3.   The purpose of the conspiracy was to defraud
lending institutions, escrow companies, purchasers of real
estate and others by making materially false representations
that induced real estate purchasers to buy, lending institutions
to lend and escrow companies to issue title insurance and
improperly disburse loan and/or sale proceeds at real estate
closings. It was part of the manner and means of the conspiracy
that:

a.   MCTIGUE would identify real estate properties for
acquisition or sale which were encumbered with substantial
mortgage liens. MCTIGUE and MELTON then either worked to gain
title to the properties, or in concert with an existing owner of

3

a property, such as BLACKWELL or others, for the purpose of
fraudulently causing the release of the public recordation of
legitimate mortgage liens encumbering the properties and selling
the properties free and clear of those encumbrances.

      b.   Upon gaining title to a property, or identifying a
property with cooperating owners, MCTIGUE and/or MELTON delivered
documents by U.S. mail to the financial institutions holding
mortgage liens against the properties.  The mailed materials set
forth a convoluted and unilateral set of rigid terms laid out in
a document identified by MELTON and MCTIGUE as a "Note Tender
Agreement" (NTA), EFT Tender Agreement, or "Mortgage Debt
Satisfaction Agreement" (MDSA).  The EFT Tender Agreement, NTA
and/or MDSA falsely represented that a valid "negotiable
instrument" had been sent to the lender in the amount of the
approximate amount of the outstanding mortgage liens.  In truth
and fact the so named "negotiable instrument" was bogus and
worthless, being drawn upon no existing account, sometimes
containing a "serial number" which oftentimes simply correlated
with the identification number assigned by the U.S. Postal
Service for the certified mailing of the materials.  These
documents unilaterally state that in the event the lending
institution fails to comply with the rigid conditions in the
"agreement", MELTON, MCTIGUE or others would become authorized to
act as representatives of financial institutions holding the

mortgages and sanctioned to perform acts on behalf of the lender, including the right to "execute and record a satisfaction of Lien for MORTGAGES".

      c.  MCTIGUE then, with the assistance of MELTON and BLACKWELL, created and filed in the Bureau of Conveyances in the State of Hawaii, a fraudulent "Satisfaction of Mortgage", signed by MELTON, in which he falsely represented himself to be an official and/or agent of the banking institution holding the mortgage. Once accepted by and filed with the Bureau of Conveyances, the fraudulent "Satisfaction of Mortgage" falsely reflected that the outstanding mortgage(s) encumbering the property had been satisfied. Because the Bureau of Conveyances is the official public record for recordation of all interests affecting real estate in Hawaii, the public record officially reflected the properties to be mortgage free, when in truth and fact they were encumbered with substantial unsatisfied mortgage liens.

      d.  MCTIGUE and/or BLACKWELL would then undertake to market and sell the properties, ultimately conveying title to good faith purchasers with a warranty deed falsely warranting the properties to be free and clear of encumbrances.

      e.  In reliance on the fraudulently released mortgages, financial institutional lenders and/or good faith purchasers transferred funds from their bank accounts in other

states to the bank accounts of escrow companies in the State of Hawaii responsible for the closing of the real estate transactions.

f.   Funds wired interstate to fund the transactions were, per MCTIGUE's and/or BLACKWELL's instructions, sent to title companies located in the State of Hawaii for the purpose of closing real estate transactions.

g.   At the closing of the real estate transactions where sale proceeds were distributed, no funds would be disbursed to pay outstanding mortgages because escrow company title searches would incorrectly indicate that the mortgage encumbering the property had been released due to the fraudulent mortgage satisfaction forms filed by MCTIGUE and/or MELTON.  Thus, nearly all funds realized from the sale of the properties were disbursed to MCTIGUE, MELTON, BLACKWELL and/or others, who would then disperse the funds in accordance with their prior agreements.

h.   MELTON would utilize the bank accounts of others, specifically associates, S.N. and J.J., for the purpose of acquiring, laundering and concealing the fraudulently derived proceeds.

i.   Funds dispersed to MCTIGUE, MELTON, BLACKWELL and others were often subsequently further transmitted to other bank accounts where they were used to fund affluent lifestyles, worldwide travel, private schools, financing of business

ventures, the purchase of personal goods, payment of personal
debts and funding the purchase of additional distressed
properties to continue the scheme to defraud financial
institutions.

## OVERT ACTS

4. In furtherance of the conspiracy and to achieve
the objects thereof, the conspirators committed, and caused to
be committed, overt acts in the District of Hawaii and
elsewhere.

a. These overt acts include, but are not limited to,
the following:

**Ko'Olani Unit 608**

(1) Background Facts: In or about Spring, 2011,
BLACKWELL, MCTIGUE and MELTON undertook to cause the fraudulent
release of two mortgages totaling $1,003,827 held by Bank of
America encumbering BLACKWELL's condominium Unit 608 located at
Ko'Olani Condominium Building in Honolulu, Hawaii.

(2) On or about April 1, 2011, MELTON mailed a
Certificate of Service, and a "Note Tender Agreement" to Bank of
America falsely representing that he had enclosed a valid
negotiable instrument in the amount of $840,767.

(3) On or about April 13, 2011, BLACKWELL sent MCTIGUE
an attachment via email entitled Copy of "Satisfaction of

Mortgage" which contained a copy of a blank satisfaction of mortgage.

(4)   On or about April 19, 2011, MELTON sent MCTIGUE an attachment via email entitled "Release of BOFA lien 608" which contained a "Satisfaction of Mortgage" form for Unit 608, Honolulu, Hawaii 96814 (Unit 608).

(5)   On or about April 22, 2011, MELTON mailed a check written on an invalid and/or non-existent account at USBank in the amount of $163,060.73, to Bank of America purporting to pay off the remaining obligation on BLACKWELL's second mortgage with Bank of America on Unit 608.

(6)   On or about April 25, 2011, BLACKWELL sent an email to MELTON and MCTIGUE regarding Unit 608 stating: "Can you send me a copy of the release before you take it down to the bureau".

(7)   On or about April 25, 2011, BLACKWELL sent MELTON an email stating "Looks good, also print on laser printer. Banks do not use ink jet".

(8)   On or about May 3, 2011, MELTON signed a fraudulent Satisfaction of Mortgage for BLACKWELL's mortgage with Bank of America claiming to be the Authorized Representative of Mortgage Electronic Registration Services,  (MERS) for Unit 608.

(9)   On May 18, 2011, the fraudulent Satisfaction of Mortgage was filed by MCTIGUE with the Bureau of Conveyances for

the State of Hawaii and Bank of America's lien was reflected as satisfied on the public record.

(10) On or about May 23, 2011, BLACKWELL listed Unit 608 on the Multiple Listing Service (MLS) for the State of Hawaii in order to market Unit 608 and obtain a good faith purchaser for the property.

(11) On or about July 16, 2011, BLACKWELL sent an email containing an accepted counter offer for Unit 608 to K.N.'s realtor advising them to open escrow with Fidelity National Title in order to finalize the sale of Unit 608.

(12) On or about August 12, 2011, BLACKWELL conveyed fee simple title to K.N., through her trust "Ko'Olani 608 Trust" for the sale price of $845,000.  BLACKWELL conveyed title by way of a warranty deed falsely warranting the property to be free and clear of encumbrances.

(13) In or about early August 2011, BLACKWELL instructed the escrow company closing the Unit 608 property sale, Fidelity National Title, on how to disperse the $843,788 in sale proceeds for Unit 608.

(14) On or about August 12, 2011, Blackwell deposited $300,000 from the sale into the bank account of her company, Optimum Marketing and Management, at First Hawaiian bank.

(15) On or about August 12, 2011, Blackwell deposited $456,315 from the sale into the Ko'Olani 608 Trust First Hawaiian bank account.

(16) On or about August 13, 2011, Blackwell arranged for a check in the amount of $382,711 from the Ko'Olani 608 Trust account to be written and dispersed to MCTIGUE.

(17) On or about August 13, 2011, MCTIGUE deposited $382,711 into her bank account at Pacific Rim Bank.

(18) On or about August 16, 2011, MCTIGUE purchased a bank check from Pacific Rim Bank drawn of the sale proceeds in the amount of $217,820 payable to S.N., an associate of MELTON.

(19) On or about August 16, 2011, MELTON instructed S.N. to deposit the $217,820 in funds into S.N.'s Bank of Hawaii account.

**Ko'Olani Unit 703**

(20) Background Facts: In or about Spring 2011 MCTIGUE, MELTON and BLACKWELL, in conjunction with their continuing effort to defraud, applied their debt elimination scheme to Ko'Olina Unit 703, located at the Ko'Olani Condominium Building in Honolulu, Hawaii.  The property was encumbered with a first mortgage held by Bank of America in the amount of $620,000 and a Home Equity Line of Credit in the amount of $77,500.

(21) On or about March, 2011, BLACKWELL and others working in conjunction with her obtained a payoff amount from

10

Bank of America for the $620,000 loan encumbering Unit 703, said amount totaled $711,225.

(22) On or about May 31, 2011, MELTON mailed a check written on an invalid and/or non-existent account at US Bank, Serial No: 2282, in the amount of $750,000.00, and an "EFT Tender Agreement" to Bank of America.

(23) On or about June 18, 2011, MELTON signed a fraudulent Satisfaction of Mortgage on behalf of Mortgage Electronic Registration Services (MERS) for Unit 703 effectively negating the recording of Bank of America's first mortgage.

(24) On or about June 16, 2011, MCTIGUE filed the fraudulent Satisfaction of Mortgage with the State of Hawaii Bureau of Conveyances on June 21, 2011.

(25) On or about June 18, 2011, MELTON signed a fraudulent Satisfaction of Mortgage on behalf of Bank of America falsely representing that Bank of America's Home Equity mortgage was satisfied.

(26) On or about June 25, 2011, BLACKWELL sent an email containing an accepted counter offer for Unit 703 to K.D.'s realtor and to escrow officer S.N. at Fidelity National Title advising them to open escrow with Fidelity National Title in order to finalize the sale of Unit 703.

(27) On or about July 8, 2011, H.B. and A.M., at the direction of BLACKWELL and MCTIGUE, conveyed fee simple title to K.D., for the sale price of $555,000.

(28) On or about July 8, 2011, following closing of the Unit 703 sale at FNT, BLACKWELL deposited $428,031 in proceeds from the sale into a checking account at First Hawaiian Bank.

(29) On or about July 8, 2011, BLACKWELL purchased a First Hawaiian cashier's check in the amount of $243,100 payable to MCTIGUE.

(30) On or about July 8, 2011, MCTIGUE deposited the $243,100 check into her Pacific Rim bank account.

(31) On or about July 8, 2011, BLACKWELL deposited a Fidelity National Title check in the amount of $17,434.54, representing a real estate commission, into the FHB checking account for OPTIMUM REALTY, which is owned and operated by BLACKWELL.

(32) On or about July 12, 2011, MCTIGUE wire transferred the sum of $145,860 from Pacific Rim Bank to S.N.'s bank account at Bank of America.

Ko'Olani Unit 1008

(33) Background Facts: In or about Fall 2011, MCTIGUE, MELTON and BLACKWELL, in conjunction with their continuing effort to defraud lending institutions, applied their debt elimination scheme to Ko'Olina Unit 1008, located at the Ko'Olani Condominium

12

Building in Honolulu, Hawaii.  Unit 1008 was owned by Ko'Olani
1008 trust, with the trustee being B.S., sister of BLACKWELL.
The property was encumbered with a first mortgage held by Bank of
America in the amount of $810,000 and a Home Equity Line of
Credit in the amount of $162,000.

(34) On or about November 16, 2011, MELTON sent a
"Mortgage Satisfaction Agreement" and a "Certified Promissory
Note" in the amount of $190,000" via U.S. mail to Bank of
America.  Accompanying the documents was a "Certificate of
Service" signed by J.J. and notarized by MELTON.

(35) On or about December 2, 2011, MELTON signed a
fraudulent Satisfaction of Mortgage falsely claiming to be the
Authorized Representative for JP Morgan Chase, N.A. (JP MORGAN)
for Unit 1008.

(36) On or about December 8, 2011, MCTIGUE filed the
Satisfaction of Mortgage with the Bureau of Conveyances for the
State of Hawaii.

(37) On or about December 2, 2011, MELTON signed a
fraudulent Satisfaction of Mortgage claiming to be the Authorized
representative for MERS for Unit 1008.

(38) On or about December 8, 2011, MCTIGUE filed the
second fraudulent "Satisfaction of Mortgage" with the Bureau of
Conveyances for the State of Hawaii.

(39) On or about February 2, 2012, BLACKWELL sent an email to T.M.'s realtor advising the realtor to open an escrow account with Fidelity National Title & Escrow in order to begin the sale of Unit 1008.

(40) On or about July 8, 2011, B.S., as trustee for the Ko'Olani Unit 1008 trust, at the direction of BLACKWELL and MCTIGUE, conveyed fee simple title to a buyer, for the sale price of $890,000.

(41) On or about February 21, 2012, BLACKWELL directed FNT to issue a check in the amount of $781,214.75 to the Ko'Olani Unit 1008 Trust.

(42) On or about February 24, 2012, BLACKWELL drafted a check in the amount of $390,126 to MCTIGUE.

(43) On or about February 24, 2012, MCTIGUE deposited the $390,126 into her bank account at Pacific Rim Bank.

(44) On or about March 1, 2012, MCTIGUE purchased a cashier's check in the amount of $210,927 in the name of S.N.

(45) On or about March 12, 2012, MELTON directed and/or caused S.N. to deposit the $210,927 into her Bank of Hawaii bank account.

**Beachwalk Condo**

(46) Background Facts: In or about Fall 2011, MCTIGUE, MELTON and BLACKWELL, in conjunction with their continuing effort to fraudulently eliminate mortgage debt, applied their debt

elimination scheme to Beachwalk Condominium Unit 56, located in the Waikiki section of Honolulu. Unit 56 was owned by M.W., K.O. K.L. and K.L., who were convinced by MCTIGUE and BLACKWELL to allow them to apply their debt elimination scheme to eliminate their mortgage debt in return for 50% of the proceeds.  Unit 56 was encumbered with a mortgage held by GMAC Mortgage LLC in the approximate amount of $469,000.

(47) On or about September 16, 2011, MELTON signed a Satisfaction of Mortgage falsely claiming to be the Assistant Secretary for GMAC Mortgage, LLC for Unit 56.

(48) On or about September 19, 2011, MCTIGUE submitted the fraudulent Satisfaction of Mortgage to the State of Hawaii Bureau of Conveyances.

(49) On or about September 19, 2011, MCTIGUE emailed MELTON a copy of the recorded Satisfaction of Mortgage to confirm with him that it had been recorded.

(50) On or about September 27, 2011, BLACKWELL listed the property located at 255 Beach Walk, Unit 56 on the Multiple Listing Service (MLS) for the State of Hawaii in order to market Unit 56 and obtain a good faith purchaser for the property.

(51) On or about November 8, 2011, BLACKWELL signed and submitted a Commission Distribution Instructions form to Old Republic Title & Escrow of Hawaii, which instructed Old Republic

to pay Optimum Realty LLC commissions in the amount of $15,078.53.

(52) On or about November 8, 2011, Per BLACKWELL's instructions, Old Republic Title & Escrow of Hawaii issued a check in the amount of $223,897.99 to M.W. and a check in the amount of $223,897.98 to K.L.

(53) On November 9, 2011, MCTIGUE instructed M.W. and K.L. to purchase an Official Bank Check from FHB in the amount of $223,897 which MCTIGUE deposited into her bank account located at Pacific Rim Bank.

(54) On November 9, 2011, MCTIGUE purchased an official bank check in the amount of $120,560 payable to S.N.

**Waikoloa Condo**

(55) On or about March 28, 2012, MCTIGUE acquired by way of a quit claim deed from Waikoloa Colony Villas tenant's association ownership of 69-555 Waikoloa Beach Drive, Unit #1904. MCTIGUE acquired the property for the sum of $20,018, although it was subject to a first mortgage in the amount of $539,475 held by Wells Fargo and a second mortgage in the amount of $67,500 held by Wells Fargo.

(56) On or about April 19, 2012, MCTIGUE mailed an MDSA representing that she was sending a "genuine, original instrument…in the amount of $650,000".

16

(57) On or about April 30, 2012, MELTON signed a Satisfaction of Mortgage form for the first mortgage lien held by Wells Fargo falsely claiming to be the Authorized Representative for Wells Fargo Bank N.A.

(58) On or about May 7, 2012, MCTIGUE recorded the fraudulent Satisfaction of Mortgage with the State of Hawaii Bureau of Conveyances.

(59) On or about April 30, 2012, MELTON signed a Satisfaction of Mortgage form for the second mortgage lien held by Wells Fargo falsely claiming to be the Authorized Representative for Wells Fargo Bank N.A.

(60) On or about May 7, 2012, MCTIGUE recorded the fraudulent Satisfaction of Mortgage with the State of Hawaii Bureau of Conveyances.

(61) On or about August 22, 2012, MCTIGUE and BLACKWELL sold the Waikoloa Condo to P.F for $261,933.51.

(62) On or about August 22, 2012, MCTIGUE instructed Title Guaranty Escrow to wire sellers proceeds to her bank account located at Pacific Rim Bank.

(63) On or about August 22, 2012, MCTIGUE received $261,933.51 from Title Guaranty Escrow Services (Title Guaranty).

(64) On or about August 29, 2012, MCTIGUE purchased two Pacific Rim Bank cashier's checks payable to Mutual Life

Insurance Co., and Mutual Trust Life Insurance Company in the amounts of $40,000, and $148,411.47, respectively.

(65) On or about September 5, 2012, MCTIGUE deposited $39,777.80 into policy number 001141329A at Mutual Trust Life Insurance.

(66) On or about September 5, 2012, MCTIGUE deposited $147,397.99 into policy number 001139725A at Mutual Trust Life Insurance.

**White Sands Condo**

(67) On or about April 3, 2012, MCTIGUE acquired by way of a quit claim deed from the White Sands Condominium Association tenant's association ownership of 77-6469 Alii Drive, Unit 230, Kailua-Kona, Hawaii 96740. MCTIGUE acquired the property for the sum of $20,047, although it was subject to a first mortgage in the amount of $376,000 held by First Magnus Financial Corporation and a second mortgage in the amount of $47,000 held by First Magnus.

(68) On or about April 20, 2012, MCTIGUE mailed a "Mortgage Debt Satisfaction Agreement" to Bank of America and a "Certified Banker's Note" falsely representing the note to be worth $460,000.

(69) On or about May 4, 2012, MELTON signed a Satisfaction of Mortgage for the first mortgage lien held by

First Magnus claiming to be the Authorized Representative for
Mortgage Electronic Registration System (MERS).

(70) On or about May 8, 2012, MELTON signed a
Satisfaction of Mortgage for the second mortgage lien held by
First Magnus again falsely representing himself to be the
Authorized Representative for Mortgage Electronic Registration
System (MERS).

(71) Both fraudulent Satisfaction of Mortgage forms
were filed on May 9, 2012 by MCTIGUE.

(72) On or about July 31, 2012, MCTIGUE and BLACKWELL
sold the White Sands Condominium Unit 230 to B.T. for $187,000.

(73) On or about July 16, 2012 MCTIGUE, MELTON and
BLACKWELL caused the wire of $10,000 in funds from Wells Fargo
Bank in California to Title Guaranty in Honolulu, Hawaii.

(74) On or about July 26, 2012 MCTIGUE, MELTON and
BLACKWELL caused the wire of $177,698 in funds from Wells Fargo
Bank in California to Title Guaranty in Honolulu, Hawaii.

(75) On or about August 2, 2012, MCTIGUE received
$161,280.50 from Title Guaranty.

(76) On or about August 2, 2012, MCTIGUE purchased a
cashier's check in the amount of $81,824.12 payable to J.J., an
associate of MELTON's.

**Keauhou Palena Condo**

(77)  On or about April 16, 2012, MCTIGUE acquired by way of a quit claim deed from the Keauhuhou Palena Tenant Association ownership of 78-7054 Kamehameha III Road, Unit 404, Kailua-Kona, Hawaii 96740 (Keauhou Palena Condo).  MCTIGUE acquired the property for the sum of $17,157.00, although it was subject to a mortgage in the amount of $336,000 held by US Bank National Association Financial.

(78)  On or about May 4, 2012, MELTON signed a Satisfaction of Mortgage falsely representing himself to be the Assistant Secretary for US Bank N.A. (US BANK) for Unit 404.

(79)  On or about September 26, 2012, MCTIGUE, and BLACKWELL sold Keauhou Palena Condo to M.R. for $199,000.

(80)  On or about August 10, 2012, MCTIGUE, MELTON and BLACKWELL caused the wire of $5,000 in funds from Capitol One from Virginia to the bank account of Title Guaranty in Honolulu, Hawaii.

(81)  On or about September 12, 2012, MCTIGUE, MELTON and BLACKWELL caused the wire of $20,000 in funds from Capitol One from Virginia to the bank account of Title Guaranty in Honolulu, Hawaii.

(82) On or about September 21, 2012, MCTIGUE, MELTON and BLACKWELL caused the wire of $19,294 in funds from Capitol One from Virginia to the bank account of Title Guaranty in Honolulu, Hawaii.

(83) On or about September 25, 2012, MCTIGUE, MELTON and BLACKWELL caused the wire of $157,706 in funds from Wells Fargo Bank in Minnesota to the bank account of Title Guaranty in Honolulu, Hawaii.

(84) On or about September 26, 2012, MCTIGUE received $181,544.85 from Title Guaranty.

(85) On or about September 26, 2012, MCTIGUE deposited $181,544.85 into her Pacific Rim bank account.

(86) On or about October 16, 2012, MCTIGUE issued three checks drawn on her Pacific Rim bank account in the amounts of $59,676, $30,000 and $20,000 all payable to MTL Insurance Company.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
(Conspiracy to Launder Monetary Instruments)

The Grand Jury further charges that:

5.     From a precise date unknown to the Grand Jury, but beginning at least by in or about February, 2011, and continuing until the date of this Indictment, in the District of Hawaii and

elsewhere, JENNIFER MCTIGUE, MARC MELTON AND SAKARA BLACKWELL, a/k/a: "Dawn Sakaguchi", the defendants, did knowingly and willfully conspire with each other and with others, both known and unknown to the Grand Jury, to commit offenses against the United States, that is:  to knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343 and mail fraud, in violation of Title 18, United States Code, Section 1341.

**MANNER AND MEANS OF THE CONSPIRACY**

6.   The allegations of paragraph 3(a) through 3(i) are incorporated as if fully set forth herein.

**OVERT ACTS**

7.   The overt acts set forth in Paragraph 4 of Count 1 of this Indictment are incorporated as if set forth herein.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3 - 23
(Wire Fraud)

The Grand Jury further charges:

### SCHEME AND ARTIFICE TO DEFRAUD

8.   From a specific time unknown, but by in or about February 2011 and continuing thereafter until the date of this Indictment, in the District of Hawaii and elsewhere, defendants: JENNIFER MCTIGUE, MARC MELTON and SAKARA BLACKWELL, along with others both known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud, and a scheme and artifice for obtaining money from lenders and others by means of material false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts.

9.   The Grand Jury hereby incorporates by reference paragraphs 3(a) through 3(i) of Count 1, as if set forth herein in their entirety.

### WIRE COMMUNICATIONS

10.   On or about the dates listed below, within the District of Hawaii and elsewhere, for the purpose of carrying out and attempting to carry out the aforesaid scheme and artifice to defraud, the defendants identified below did knowingly transmit and cause to be transmitted in interstate commerce writings, signs, and signals by means of wire communications, with each

23

such transmission constituting a separate count of the

Indictment:

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 3 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 04/13/2011 | Email Communication from sakara@optimumworld.com to jennwealth@gmail.com, regarding Ko'Olani 608 discussing satisfaction of mortgage; re:  Unit 608 |
| 4 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 04/19/2011 | Email Communication from marcmelton@gmail.com to jennwealth@gmail.com sending as an attachment a satisfaction of lien form; re: Unit 608. |
| 5 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 04/25/2011 | Email Communication from marcmelton@gmail.com to sakara@optimumworld.com, and jennwealth@gmail.com, regarding Koolani 608 – Bank of America correspondence 042211; re: Unit 608. |
| 6 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 04/25/2011 | Email Communication from sakara@optimumworld.com to marcmelton@gmail.com regarding satisfaction of mortgage form; re: Unit 608. |
| 7 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 7/16/2011 | Email Communication from sakara@optimumworld.com to a property buyer's realtor instructing the realtor to open an escrow account with Fidelity National; re: Unit 608. |

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 8 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 6/25/2011 | Email Communication from sakara@optimumworld.com to a property buyer's realtor and to escrow officer at Fidelity National Title; re: Unit 703 |
| 9 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 6/25/2011 | Email communication from sakara@optimumworld.com to K.D.'s realtor and Sunya Narciso at FNT instructing them to open escrow; Re: Unit 703 |
| 10 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 2/2/2012 | Email Communication from sakara@optimumworld.com to a property buyer's realtor advising her to open escrow account at Fidelity National Title; re: Unit 1008 |
| 11 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 2/10/2012 | Wire of Funds from BANCO NACIONAL De MEXICO account in Mexico to Fidelity National Title & Escrow's account in Hawaii in the amount of $890,000; re: Unit 1008 |
| 12 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 9/19/2011 | Email Communication from jennwealth@gmail.com to marcmelton@gmail.com sending as an attachment a filed Satisfaction of Mortage; re: Unit 56. |
| 13 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 11/02/2011 | Wire of Funds from Asset Preservation Inc's account at Citibank in New York to Old Republic Title's bank account in Hawaii in the amount of $434,485.30; re: Unit 56. |

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 14 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 11/07/2011 | Wire of Funds from R.S.'s account at Saitama Resona Bank Limited in Tokyo, Japan to Old Republic Title & Escrow of Hawaii's account in Hawaii in the amount of $49,984.00; Re: Unit 56 |
| 15 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 8/10/2012 | Wire of Funds from P.F. and I.L.'s Bank of New York City account in New York to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $20,000; Re: Waikola Unit 1904. |
| 16 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 8/10/2011 | Wire of Funds from P.F. and I.L.'s Bank of New York City account in New York to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $265,000; Re: Waikola Unit 1904. |
| 17 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 8/22/2011 | Wire of Funds from Pacific Coast Banker's Bank account in California to Jennifer McTigue's Pacific Rim bank account in Hawaii in the amount of $261,933.51; Re: Waikola Unit 1904. |
| 18 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 07/17/2012 | Wire of Funds from the F.B. Revocable Trust account at Wells Fargo Bank in California to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $10,000; Re: White Sands Unit 230. |

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 19 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 7/26/2012 | Wire of Funds from the F.B. Revocable Trust account at Wells Fargo Bank in California to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $177,698.92; Re:  White Sands Unit 230. |
| 20 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 8/10/2012 | Wire of Funds from Capital One, NA account in Virginia to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $5,000; Re: Keahou Palena Unit 404. |
| 21 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 9/12/2012 | Wire of Funds from Capital One, NA account in Virginia to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $20,000; Re: Keahou Palena Unit 404. |
| 22 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 9/21/2012 | Wire of Funds from Capital One, NA account in Virginia to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $19,294.53; Re: Keahou Palena Unit 404. |
| 23 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 9/25/2012 | Wire of Funds from Capital One, NA account in Virginia to Title Guaranty Escrow Services, Inc's account in Hawaii in the amount of $157,706.23; Re: Keahou Palena Unit 404. |

All in violation of Title 18, United States Code, Sections 1343.

## COUNTS 24 - 29
### (Mail Fraud)

The Grand Jury further charges:

### The Scheme and Artifice to Defraud

11.   The allegations in paragraphs 3(a) through 3(i) of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

### Mail Communications

12.   On or about the dates set forth below, in the District of Hawaii and elsewhere, the defendants, JENNIFER MCTIGUE, MARC MELTON and SAKARA BLACKWELL, for the purpose of executing the above-described scheme and artifice to defraud, did knowingly send or deliver or cause to be sent or delivered, by the Postal Service, and private and commercial interstate carriers, according to the directions thereon, the following matters and things, with each such mailing constituting a separate count of this Indictment:

//

//

//

//

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 24 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 4/1/2011 | One Letter containing a Note Tender Agreement mailed to BAC Home Loans; Re: Unit 608. |
| 25 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 4/22/2011 | A Certificate of Service and Bogus Check in the amount of $163,060.73 mailed to BAC Home Loans; Re: Unit 608. |
| 26 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 5/31/2011 | A Certificate of Service and Bogus Check in the amount of $750,000 mailed to BAC Home Loans Servicing LP; Re: Unit 703. |
| 27 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 11/16/2011 | A Mortgage Satisfaction Agreement and Promissory Note in the amount of $190,000 to Bank of America Corp.; Re: Unit 1008 |
| 28 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 4/19/2012 | A "Mortgage Debt Satisfaction Agreement" with representation that a $650,000 "genuine, original instrument" was being mailed to Well Fargo; Re: Waikoloa Unit 1904. |

| COUNT | DEFENDANT(S) CHARGED | DATE OF WIRE | DESCRIPTION OF MAILING |
|-------|---------------------|--------------|------------------------|
| 29 | JENNIFER MCTIGUE MARC MELTON SAKARA BLACKWELL | 4/20/2012 | A Mortgage Debt Satisfaction Agreement and "Certified Banker's Note" in the represented amount of $460,000 to Bank of America; Re: White Sands Unit 230. |

**COUNT 30**
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

13.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

14.   On or about August 12, 2011, in the District of Hawaii, and elsewhere, SAKARA BLACKWELL, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $456,315.34 into the Ko'Olani 608 Trust First Hawaiian Bank account, in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 3, 4, 5, 6 and 7 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## COUNT 31
### Money Laundering
### (18 U.S.C. § 1957)

The Grand Jury further charges:

15.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of the Indictment.

16.   On or about August 12, 2011, in the District of Hawaii, and elsewhere, SAKARA BLACKWELL, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $300,000.00 into the First Hawaiian Bank Account checking account of Optimum Marketing & Management Corp, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 3, 4, 5, 6 and 7 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

//

//

//

//

31

### COUNT 32
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

17.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

18.   On or about August 16, 2011, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $382,711.89 into the Blue Ocean Money Strategies, Inc. checking account at Pacific Rim Bank, in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 3, 4, 5, 6 and 7 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

### COUNT 33
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

19.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

20.   On or about August 16, 2011, in the District of Hawaii, and elsewhere, MARC MELTON, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $217,820 into the Bank of Hawaii account of S.N. in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 3, 4, 5, 6 and 7 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

### COUNT 34
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

21.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

22.   On or about July 8, 2011, in the District of Hawaii, and elsewhere, SAKARA BLACKWELL, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $428,031.91 into

the First Hawaiian Bank checking account of SAKARA BLACKWELL, in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 8 and 9 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## COUNT 35
### Money Laundering
### (18 U.S.C. § 1957)

The Grand Jury further charges:

23.    The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

24.    On or about July 8, 2011, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $243,100 into the Blue Ocean Money Strategies, Inc. checking account at Pacific Rim Bank, in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 8 and 9 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

**COUNT 36**
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

25.   The Grand Jury realleges and incorporates as
though set forth in full herein the allegations of Counts 1
through 29 of this Indictment.

26.   On or about July 12, 2011, in the District of
Hawaii, and elsewhere, MARC MELTON, the defendant, did knowingly
engage in a monetary transaction by, through or to a financial
institution, affecting interstate and foreign commerce, in
criminally derived property of a value greater than $10,000, that
is, the deposit of funds in the amount of $145,860 into the Bank
of America account of S.N. in Lodi, California, such property
having been derived from a specified unlawful activity, to wit:
the wire frauds charged in Counts 8 and 9 of this Indictment.

All in violation of Title 18, United States Code,
Sections 1957(a).

**COUNT 37**
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

27.   The Grand Jury realleges and incorporates as
though set forth in full herein the allegations of Counts 1 and
29 of the Indictment.

28.   On or about November 9, 2011, in the District of Hawaii, and elsewhere, SAKARA BLACKWELL, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $781,214 into the Ko'Olani 1008 Trust bank account at First Hawaiian Bank, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 10 and 11 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

### COUNT 38
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

29.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 and 29 of the Indictment.

30.   On or about February 24, 2012, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $390,126.87 into

36

the Pacific Rim Bank checking account of Blue Ocean Money Strategies, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 10 and 11 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

### COUNT 39
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

31.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

32.   On or about March 1, 2012, in the District of Hawaii, and elsewhere, MARC MELTON, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $210,927 into the Bank of Hawaii account of S.N. in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 10 and 11 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## COUNT 40
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

33.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 and 29 of the Indictment.

34.   On or about November 9, 2011, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $223,897.99 into the Pacific Rim Bank checking account of Blue Ocean Money Strategies, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 12, 13 and 14 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## COUNT 41
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

35.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

38

36.   On or about November 9, 2011, in the District of Hawaii, and elsewhere, MARC MELTON, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $120,560 into the Bank of Hawaii account of S.N. in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 12, 13 and 14 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## COUNT 42
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

37.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 and 29 of the Indictment.

38.   On or about August 22, 2012, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $261,933 into the

Pacific Rim Bank checking account of Blue Ocean Money Strategies,
such property having been derived from a specified unlawful
activity, to wit: the wire frauds charged in Counts 15, 16 and 17
of this Indictment.

All in violation of Title 18, United States Code,
Sections 1957(a).

## COUNT 43
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

39.  The Grand Jury realleges and incorporates as
though set forth in full herein the allegations of Counts 1 and
29 of the Indictment.

40.  On or about August 2, 2012, in the District of
Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did
knowingly engage in a monetary transaction by, through or to a
financial institution, affecting interstate and foreign commerce,
in criminally derived property of a value greater than $10,000,
that is, the deposit of funds in the amount of $161,280.50 into
the Pacific Rim Bank checking account of Blue Ocean Money
Strategies, such property having been derived from a specified
unlawful activity, to wit: the wire frauds charged in Counts 18
and 19 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

### COUNT 44
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

41.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 through 29 of this Indictment.

42.   On or about August 2, 2012, in the District of Hawaii, and elsewhere, MARC MELTON, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $81,824 into the Bank of Hawaii account of J.J. in Honolulu, Hawaii, such property having been derived from a specified unlawful activity, to wit: the wire frauds in Counts 18 and 19 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

//

//

//

//

## COUNT 45
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

11.   The Grand Jury realleges and incorporates as though set forth in full herein the allegations of Counts 1 and 29 of the Indictment.

12.   On or about September 26, 2012, in the District of Hawaii, and elsewhere, JENNIFER MCTIGUE, the defendant, did knowingly engage in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of funds in the amount of $181,544 into the Pacific Rim Bank checking account of Blue Ocean Money Strategies, such property having been derived from a specified unlawful activity, to wit: the wire frauds charged in Counts 20, 21, 22 and 23 of this Indictment.

All in violation of Title 18, United States Code, Sections 1957(a).

## FORFEITURE ALLEGATIONS

1.   The allegations contained in Counts 1 through 29 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to

Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

2.    Upon conviction of the offenses in violation of Title 18, United States Code, Section 1341 and 1343 set forth in Counts 3 through 29, the defendants, JENNIFER MCTIGUE, MARC MELTON and SAKARA BLACKWELL, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following:

a.    One Hundred Sixty thousand dollars ($160,000) located in Bank Account number at Iowa State Bank in Fairfield, Iowa; and

b.    A sum of money equal to $3,145,259 in United States currency which represents the total amount of money constituting proceeds obtained by Defendants JENNIFER MCTIGUE, SAKARA BLACKWELL and MARC MELTON as a result of the wire and mail fraud offenses alleged in Counts 3 through 29 of the Indictment.

3.    If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

  All pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c).

  4. The allegations contained in Counts 1 through 45 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

  5. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956(h) and 1957, the defendants, JENNIFER MCTIGUE, SAKARA BLACKWELL and MARC MELTON, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

  a. Any and all funds located in Iowa State Bank Account No. 378204;

b.    any and all funds located in First Hawaiian Bank Account numbers: 45-378012, 45-051293, 45-059421, 45-082547, 45-062740, 45-048276, 45-048152, or 45-048233;

c.    any and all funds or property located in First Hawaiian Bank safe deposit box numbers 560 and 787;

d.    any and all funds located in Mass Mutual policy number 21016084;

e.    any and all funds located in MTL Insurance Company policy numbers 001141329A and 001139725A;

f.    any and all funds located in Northwest Mutual Life Insurance Company policy numbers: 20249890, 13777171, and 12953801;

g.    any and all funds located in Pacific Rim Bank account number 1013003031;

h.    any and all funds located in USAA Bank account numbers 00256-3938-2 and 00256-3939-0; and

i.    a sum of money equal to $3,145,259 in United States currency which represents the total amount of money constituting proceeds obtained by Defendants JENNIFER MCTIGUE, SAKARA BLACKWELL and MARC MELTON as a result of the wire and mail fraud offenses alleged in Counts 1 through 29 of the Indictment.

j.    a sum of money equal to $3,145,259 in United States currency which represents the total amount of money involved in or traceable to the money laundering offense alleged in Count … of the Indictment.

6.    If any of the property described above, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited
     with, a third party;

c.   has been placed beyond the jurisdiction of the
     court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which
     cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1) and Title 28, United States Code, Section

2461(c).

A TRUE BILL.

DATED:  January 3, 2014, at Honolulu, Hawaii.


/s/ Foreperson
FOREPERSON


FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii


LESLIE E. OSBORNE, JR.
Chief, Fraud & Financial Crimes


KENNETH M. SORENSON
Assistant U.S. Attorney